David R. PATTERSHALL

v.

Ronald JENNESS, et al.

Supreme Judicial Court of Maine.

Argued Nov. 5, 1984.
Decided Dec. 26, 1984.

Mitchell & Davis, P.A., Ellerbe P. Cole (orally), Jed Davis, Augusta, for plaintiff.

Richardson, Tyler & Troubh, John S. Whitman (orally), Portland, William S. Silsby, Jr., Ellsworth, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff David R. Pattershall appeals from the civil judgment of the Superior Court (Waldo County), entered on the jury's verdict for defendant Ronald Jenness and for defendants Reginald E. Jenness and Elsie T. Jenness, doing business as Rollie's Cafe in Belfast. Plaintiff alleged that Ronald Jenness assaulted him, and that Ronald's employers (who are also his parents), Reginald E. Jenness and Elsie T. Jenness, were vicarously liable, in addition to Ronald's primary liability, for the damages caused by their servant's assault. The jury found that Ronald acted in justifiable self-defense, and therefore on judgment for defendants, plaintiff recovered nothing. The principal argument among the numerous issues raised on appeal, is the claim that the Superior Court erred in ruling that Ronald's criminal assault conviction arising from the same altercation did not bar defendants from litigating Ronald's civil liability. We find no error below and affirm the judgment for defendants.

## I.

On the afternoon of February 17, 1977, plaintiff was in Rollie's Cafe in Belfast, drinking beer with several friends. Ronald Jenness was waiting on tables and tending bar. Plaintiff and his companions began to utter numerous vulgarities in loud voices which were audible well beyond the confines of their table. Ronald repeatedly told plaintiff to lower his voice and stop swearing. After one particularly offensive comment by plaintiff, Ronald told plaintiff to leave the cafe. Plaintiff replied that he would leave if Ronald went with him. Ronald removed his eyeglasses and held open the door. Plaintiff passed by Ronald to the sidewalk whereupon plaintiff made a sudden 180 degree turn so that he was facing Ronald. Although plaintiff denied making a fist (Ronald and another witness contradict this), he admitted his arms might have been swinging. Ronald threw one punch, breaking plaintiff's nose. Plaintiff has had several operations on his nose and claims to

have lost all sense of taste and smell as a result of the assault.

Ronald was subsequently charged with a misdemeanor criminal assault. After trial in District Court, he was found guilty and fined $100. Ronald appealed to Superior Court, and on June 17, 1977, after a jury trial, he was found guilty and fined $150. Plaintiff's original civil complaint was filed thereafter in August 1977. Plaintiff amended his complaint on May 9, 1983. The amended complaint demanded judgment against Ronald in the amount of $250,000 for general and special damages and $500,000 as exemplary or punitive damages. Judgment in the same amounts was demanded against Reginald and Elsie, individually, or d/b/a Rollie's Cafe. Among other defenses, defendants' answer set forth that Ronald acted in self-defense and Ronald and plaintiff agreed to enter into a common affray.

The Superior Court originally set the time for completion of discovery and the beginning of the trial as the summer of 1982. The case was continued on defendants' motion to May 1983. The plaintiff's motion to continue trial was granted and trial was finally set for November 1983. In June 1983, the Superior Court extended the time for discovery to August 1, 1983. Defendants took advantage of the extended discovery period by deposing plaintiff and his doctor.

After a hearing, two pretrial motions were resolved in defendants' favor by the Superior Court on September 30, 1983. Defendants had moved that no reference be made at trial to Ronald's criminal assault convictions. Plaintiff had moved for partial summary judgment on the issue of liability arguing that the criminal convictions estopped defendants from contesting Ronald's liability. The Superior Court granted defendants' motion in part and prohibited any reference to the result of the criminal trial, excepting the use of the testimony from the trial for purposes of cross-examination and introduction as prior testimony. The Superior Court denied plain-

tiff's motion for partial summary judgment on the grounds that four issues needed to be developed at trial: punitive damages, liability of Reginald and Elsie, comparative fault, and possible inconsistencies in plaintiff's testimony.

At the trial, plaintiff and defendants' motions for directed verdict were denied. The jury found for defendants on the issue of self defense, and judgment was entered on the verdict, plaintiff recovering nothing. The Superior Court denied plaintiff's motions for judgment notwithstanding the verdict and for a new trial. Plaintiff now appeals to the Law Court. We deny the appeal.

## II.

The main issue is whether plaintiff should have been permitted to use Ronald's earlier criminal conviction offensively to prevent defendants from relitigating the issue of Ronald's liability. In *Hossler v. Barry*, 403 A.2d 762, 768–769 (Me.1979), this Court held that the offensive use of collateral estoppel, *i.e.*, where a plaintiff would estop the defendant from relitigating issues previously litigated by the defendant against another party, would be permitted only on a case-by-case basis. The *Hossler* decision involved successive civil suits and was silent on the application of offensive collateral estoppel to a criminal prosecution and subsequent civil suit brought by the victim of the crime.

In 1983 in *Hanover Insurance Co. v. Hayward*, 464 A.2d 156 (Me.1983), this Court ruled on the weight to be given a final judgment of conviction in a later civil action. We held that where issues were actually litigated and finally adjudicated in a criminal proceeding, the conviction "conclusively establishes all facts essential to the final judgment of conviction." *See id.* at 160. We limited the reach of our hold-

ing to those cases in which "the defendant had both the incentive and the opportunity to fully and fairly litigate the issues in the criminal proceedings." (citations omitted) *See id.* *Hanover Insurance* involved an underlying felony conviction of arson.

■ Our opinion in *Hanover Insurance* dealt only with the preclusive effect of a conviction for an offense punishable by imprisonment for one year or more when offered against the felon. In the present case, we are required to consider the preclusive effect afforded a misdemeanor conviction when offered against the misdemeanant and his parent/employers. We decline to adopt a *per se* rule; rather, we start from the premise that "collateral estoppel is, after all, a flexible doctrine meant to serve the ends of justice not to subvert them." *Hossler v. Barry*, 403 A.2d at 769.[1] As a practical matter it is undoubtedly accurate to note that it will be more difficult to establish the absence of an incentive to fully litigate, when dealing with a serious crime. Whether the underlying offense is a felony or misdemeanor, however, the issue remains the same: did the defendant have both the incentive and the opportunity to fully and fairly litigate the issues in the criminal proceeding.

Without considering the more attenuated circumstances of the parents, there are several factors in the present case which undercut the application of the doctrine of collateral estoppel against defendant Ronald Jenness. There is a correlation between the seriousness of the offense and the incentive to fully and vigorously litigate. The maximum fines for misdemeanor convictions are low in comparison with the potential damages that could be awarded in a civil action. The fine actually imposed may be even lower. Although misdemeanor convictions may involve a potential sentence of imprisonment, the risk of

---

**1.** In *Hanover Insurance* this Court unintentionally equated the admissibility of a conviction under M.R.Evid. 803(22) with the applicability of collateral estoppel to a prior conviction. *See Hanover Insurance Co. v. Hayward,* 464 A.2d at 160 n. 7. We now agree that the evidentiary rule "has nothing to do with the use of res judicata or collateral estoppel." Field and Murray, *Maine Evidence,* 207 (1976).

incarceration varies widely with the facts of the individual case.

At the time of his criminal trial in Superior Court, Ronald may, in theory, have faced a maximum fine of $500 and imprisonment for up to 364 days but in reality the range of punishment had been severely circumscribed by the action of the District Court. In fact, he received a fine of $150 and no incarceration was imposed. Given the nature of the allegations and Ronald's unbesmirched record, the minimal nature of Ronald's punishment was foreseeable. In contrast, plaintiff's complaint sought damages in the hundreds of thousands of dollars.

Not only may Ronald have lacked the incentive to fully and vigorously litigate because of the likelihood of only a small fine being imposed, he could not have reasonably been expected to foresee that the criminal judgment might be used against him in a civil suit. Ronald's criminal conviction occurred in 1977, and preceded plaintiff's civil action; *Hossler* was decided in 1979 and *Hanover Insurance* in 1983.

Beyond the question of incentive, we must examine whether "the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *See Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 330–331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979) (adverse result in injunction collaterally estopped defendant from relitigating same issues in legal action before jury). Civil discovery procedures and opportunities are more extensive than those permitted by criminal discovery. *Compare* M.R.Civ.P. 26 *with* M.R.Crim.P. 16. One likely result of the differences in discovery is the uncovering of additional

evidence in a civil suit. Although differences in civil and criminal discovery also hold true for felony prosecutions later used to estop a defendant from relitigating, when coupled with a misdemeanant's relative lack of incentive to litigate to the full extent of his resources, differences in discovery opportunities are another indication that application of collateral estoppel to a criminal offense may be unfair.

■ Finally, we must determine whether the issues are identical in the first and second actions. Ronald was convicted by general verdict of criminally assaulting plaintiff in violation of 17-A M.R.S.A. § 207 (1983). The general verdict permits only the conclusion that Ronald caused plaintiff bodily injury either intentionally, knowingly or recklessly. In the civil suit, plaintiff alleged that Ronald intentionally assaulted him. To act intentionally in tort is to act with substantial certainty as to the consequences of one's action. Professor Prosser states that "the mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent." *See* Prosser, *Law of Torts,* 32 (4th ed. 1971). At the time of the criminal trial, the criminal code defined acting recklessly with respect to a result as consciously disregarding a substantial and unjustifiable risk that conduct will cause such a result. *See* 17-A M.R.S.A. § 10(3)(A) (P.L.1975, c. 499, § 1). Conviction for a criminal act based on reckless conduct cannot preclude litigation of civil liability for the same act premised on intentional conduct. *Cf. Patrons Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888, 892 (Me.1981). We are not persuaded that the Superior Court erred in declining to apply the doctrine of collateral estoppel offensively.[2]

2. We do not reach the issue whether the parties against whom the judgment was to be asserted are identical to or in privity with the parties to the earlier criminal judgment. Defendants, Reginald and Elsie Jenness were not defendants in the criminal case. Their only involvement of record, in the criminal case was Elsie's appearance as a witness for Ronald. We do not decide whether their relation to Ronald as parents and

employers would establish privity between Ronald and themselves. *Cf. Hossler,* 403 A.2d at 770 (no privity exists between parent and child); *Compare DiCarlo v. Scoglio,* 317 Mass. 773, 60 N.E.2d 762, 762 (1945) (judgment against employee not res judicata against employer when employer had no opportunity to defend himself in action against employee), *with* 1B J. Moore &

## III.

We resolve plaintiff's remaining points of appeal in defendants' favor. First, plaintiff alleges that the Superior Court abused its discretion in extending the time for discovery. The trial court has wide discretion over discovery matters. *See, e.g., Reeves v. Travelers Insurance Company,* 421 A.2d 47, 50 (Me.1980). Although more than a year from the original deadline for completion of discovery had elapsed when defendants moved to amend the pretrial order to permit extension of discovery, the extended discovery period neither interfered with preparation for trial nor caused plaintiff undue expense or inconvenience. In these circumstances, we cannot say the presiding justice abused his discretion.

Second, plaintiff argues the presiding justice erred in admitting testimony of the events that occurred in Rollie's Cafe before plaintiff stepped out onto the sidewalk, *i.e.,* evidence of plaintiff's offensive behavior. The presiding justice correctly admitted evidence of plaintiff's offensive behavior as an indication of the reasonableness of Ronald's subjective belief that plaintiff was attacking him. *See State v. Smith,* 472 A.2d 948, 950 (Me.1984). Any prejudice to plaintiff resulting from admission of evidence of events preceding the punch was neutralized by the court's limiting instruction to the jury that "words alone, no matter how strong, without some act do not justify an assault." *See State v. Tibbetts,* 379 A.2d 735, 737 (Me.1977).

Third, because the sole issue at the trial was self-defense, the Superior Court did not err in refusing to give a jury instruction that defendants could not rely on plaintiff's assumption of the risk or contributory negligence, or that the jury could consider the law of mutual combat. Nor was there error in the Superior Court's refusal to instruct the jury on the law of *Robichaud v. Maheux,* 104 Me. 524, 72 A. 334 (1908), which held that a defendant who sold liquor to a plaintiff, and got him drunk, could not complain of the plaintiff's behavior. *Robichaud* is distinguishable from the present case in at least two particulars: no evidence was presented in this case that plaintiff was drunk, and *Robichaud* involved mitigation of damages not self-defense.

Fourth, the presiding justice declined to permit the jury to inspect items plaintiff used in a courtroom demonstration to show he had lost the senses of taste and smell. Before an item can be exhibited to the jury it must have "been marked for identification, properly identified, shown to opposing counsel, and received in evidence." *See State v. Saulle,* 414 A.2d 897, 899 (Me.1980). The items used in the demonstration were never received in evidence. The admissibility in evidence of an object in the nature of demonstrative evidence is within the sound discretion of the presiding justice. *See Cope v. Sevigny,* 289 A.2d 682, 689 (Me.1972). Furthermore, when the presiding justice ruled that the jury would not be allowed to handle the items, plaintiff's counsel said, "Okay," thereby waiving any objections to the court's ruling.

Finally, plaintiff argues that the Superior Court erred in excluding testimony that Ronald had been involved in other fights one of which allegedly occurred while in the scope of his employment at Rollie's Cafe. While examining Elsie Jenness in an attempt to impeach her credibility, plaintiff's counsel asked if she knew of other fights in which Ronald had taken part. She said no. Then counsel asked if she had heard of three people whose names he gave. She said no. At a side bar conference requested by defense counsel, plaintiff's counsel explained that the three people he mentioned had fought with Ronald, and plaintiff's counsel planned to attack Elsie's credibility. The Superior Court ruled that evidence of other fights Ronald might have had were inadmissible and

T. Currier, *Moore's Federal Practice* ¶ 0.412[5]   (2d ed. 1974).

therefore an attack on credibility based on those fights was also improper.

Plaintiff cannot now be heard to complain of the court's ruling. Plaintiff's counsel explicitly stated that he was seeking to attack the witnesses' credibility and offered no other basis for the line of inquiry. No further witnesses on this point were called and no offer of proof was made. The error, if any, is not preserved on this record.

The entry is:

Judgment affirmed.

All concurring.