**Edward CAMPBELL, Plaintiff,**

v.

**STATE OF MAINE, et al., Defendants.**

**Edward CAMPBELL, Plaintiff,**

v.

**TOWN OF FREEPORT, et al., Defendants.**

**Civ. Nos. 84–0154–B, 85–0057–B.**

United States District Court, D. Maine.

Oct. 1, 1985.

---

Robert S. Frank, Asst. Atty. Gen., Augusta, Me., John M.R. Paterson, Bernstein, Shur, Sawyer & Nelson, Randall B. Weill, Kim Anderson True, Portland, Me., Bernard J. Kubetz, Bangor, Me., for defendants.

David A. Corson, Yarmouth, Me., for plaintiff.

## MEMORANDUM AND ORDER ON RECOMMENDED DECISION OF THE MAGISTRATE

CYR, Chief Judge.

Plaintiff Edward Campbell brings this action under 42 U.S.C. § 1983, suing the State of Maine,[1] the Town of Freeport,[2] two Freeport police chiefs, the Freeport town manager, the chief of police of Old Town, the former district attorney for Penobscot County, an assistant state attorney general, and two investigators from the state attorney general's office. Plaintiff complains that he was denied certain constitutional rights in connection with (1) his activities as a union organizer while employed by the Freeport Police Department, and (2) his arrest and conviction for burglary and armed theft.[3]

The first count of the complaint alleges that in 1973, while serving as a sergeant on the Freeport Police Department, Campbell was responsible for establishing a local union, the Freeport Police Benefit Association [FPBA], for employees of the Freeport Police Department. On behalf of the FPBA, Campbell presented a proposed contract to the police chief and town manager, and one month later, in December 1973, Campbell was fired for "conduct unbecoming an officer." Complaint, ¶¶ 10–12. Campbell states that his discharge was in response to his union activities, and further alleges that in 1974 the Maine State Labor Board ordered him reinstated, with back pay. The gravamen of the first count of Camp-

---

1. The State of Maine's motion to dismiss was granted without objection January 8, 1985. Therefore, the State of Maine is no longer a party.

2. On January 23, 1985 this court ordered that the Town of Freeport be dismissed for insufficient service of process. Plaintiff then properly served the town with an identical complaint, and the Magistrate ordered that action consolidated with the original action.

3. *State v. Campbell,* Cr. No. 77–21 (Penob.Cty. Superior Ct., April 1, 1977).

bell's section 1983 claim is that various defendants [4]

> engaged in a conspiracy to deprive the Plaintiff of his constitutionally protected rights by developing a payroll padding scheme within the Freeport Police Department, which scheme was designed to reward those individuals employed by the Town of Freeport who would assist in furthering the plot to discredit the Plaintiff and impeach his efforts before the Maine Public Employee Labor Relations Board.

Complaint, ¶ 17.[5]

The second count alleges that several of the defendants conspired to fabricate a felony charge against plaintiff. In furtherance of this conspiracy, plaintiff alleges that another policeman, Arthers, charged with a series of crimes, was threatened with more serious punishment and thereby forced to implicate Campbell in a robbery that occurred in Old Town. Campbell states that defendants "caused" Arthers to testify falsely as to the date of the break-in, and that this conspiracy among defendants resulted in Campbell being convicted of armed breaking and entering and theft.[6]

The third count relates to the same criminal trial and conviction. Plaintiff alleges that his due process rights were violated by defendants calling a witness "they all knew was unreliable." Complaint, ¶ 23. Furthermore, plaintiff alleges that information essential to his motion for a new trial in the criminal proceeding was withheld from him, "in furtherance of [defendants'] continuing conspiracy to violate the plaintiff's due process...." Complaint, ¶ 27. Plaintiff demands $10 million in damages for loss of liberty and other injuries suffered as a result of the alleged conspiracies.

All defendants have filed motions to dismiss and for summary judgment. On March 27, 1985 the Magistrate issued his Recommended Decision, in which he recommended granting summary judgment to all defendants on all counts. Plaintiff filed timely objections. The court now undertakes *de novo* review of those portions of the Recommended Decision to which there are objections. 28 U.S.C. § 636(b).

I. *The Allegations Pertaining To The Payroll Padding Scheme*

The Magistrate recommended that defendants' motions for summary judgment on the first count of plaintiff's complaint be granted. The Magistrate noted that plaintiff won his case before the Public Employee Labor Relations Board [PELRB], gaining an order for reinstatement and an award of back pay. Although the complaint alleges that the town is appealing that decision, the plaintiff's affidavits establish that the town requested that the appeal be dismissed. Thus the Magistrate stated that "state procedures granted the plaintiff redress with respect to his claim that he had been discharged for his union activities." Recommended Decision, at 3. As to the allegations that payroll padding and fraudulent fund raising were used by defendants to discredit the plaintiff before the PELRB, the Magistrate interpreted these allegations as "apparently designed to show that plaintiff was deprived of liberty or property without due process of law." Recommended Decision, at 4. Relying on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Magistrate held that there is no constitutional violation so

---

**4.** Different counts allege actions against various defendants. Because the court is granting summary judgment for all defendants on all counts, and to minimize confusion, the court will simply refer, throughout this memorandum, to "defendants," without further delineating which defendants are named.

**5.** Paragraph 18 of the complaint is in the same vein as paragraph 17, alleging that the police chief used a fraudulent fund raising scheme "to

award [sic] individuals who cooperated with him." Complaint, ¶ 18.

**6.** Campbell was found guilty of burglary, class A, Me.Rev.Stat.Ann. tit. 17–A, § 401, and theft, class B, Me.Rev.Stat.Ann. tit. 17–A, § 353, and served nine months at the Penobscot County Jail, and a short term of probation. *See State v. Campbell*, 423 A.2d 952 (Me.1980) (giving history of criminal conviction in denial of motion for new trial).

long as the state provides adequate post-deprivation remedies. Recommended Decision, at 4. Assuming that the allegations of misconduct were true, the Magistrate stated that plaintiff "nevertheless succeeded in achieving full vindication with respect to the discharge through the Maine [PELRB] as affirmed by the Superior Court, a judgment that becomes final with the dismissal of the Town's appeal. It is hard to conceive how a remedy could be more adequate than that." *Id.* Thus the Magistrate recommended granting defendants' motions for summary judgment on the first count on the basis of the existence of an adequate post-deprivation remedy.

Plaintiff objects to this recommendation, stating that "the Magistrate has overlooked a still unresolved dispute involving the plaintiff before the [PELRB]." Plaintiff's Written Objections To Report and Recommended Decision of the Magistrate, ¶ 1 [hereinafter cited as Objections]. Plaintiff does not precisely identify the "still unresolved dispute." Plaintiff's memorandum states:

> The PLAINTIFF upon his return from jail was fairly certain that he could prove the conspiracy to frame him and believed that he was still the sole Sergeant member of the bargaining unit and had been ordered reinstated and fully expected to get his job back with the Town of Freport [sic]. The fact that he has not yet been vindicated has been as a result of the on going conspiracy and his rights protected by the statute are still viable and have not been ever resolved.

7. Section 1983 provides that:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C. § 1983 (1982).

8. Termination of employment may constitute a deprivation of a liberty interest in certain cir-

Plaintiff's Memorandum Of Law In Support Of Objections To Report And Recommended Decision Of Magistrate, at 1 [hereinafter cited as Plaintiff's Memo].

To support an action under section 1983,[7] a plaintiff must establish that conduct of a person or persons, acting under color of state law, deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912–13. Count I of Campbell's complaint does not state what constitutional right he was deprived of by the alleged conduct of defendants; however, the factual allegations focus on the events surrounding the loss of his job and his conviction and incarceration. Thus this court will treat the first count of the complaint as alleging a violation of the fourteenth amendment: *viz.*, that plaintiff was deprived of life, liberty, or property without due process of law, U.S. Const., amend. XIV. Furthermore, as the first count refers specifically to a plot to discredit the plaintiff before the PELRB, an entity vested with certain powers over the relationship between public employers and their employees, *see* Me.Rev.Stat.Ann.Tit. 26, § 968 (1974 & Supp. 1984–1985), it appears that plaintiff is alleging that the conduct of state actors is depriving him of employment, which, depending on state law, may rise to the level of a property interest.[8] *See generally Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (discussing whether an expectation of employment ris-

cumstances, i.e., when there is a termination accompanied by a defamatory report that is made public. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *see also Developments In The Law— Public Employment*, 97 Harv.L.Rev. 1611, 1789–91 (1984). The facts alleged in this case clearly do not come within this aspect of due process, in that there is no allegation of a defamatory report, or of publication of the facts of discharge. Here, the allegation is that state actors conspired to influence witnesses before a hearing board, which can only affect employment.

es to the level of a protected property interest.)

After thoroughly reviewing the pleadings, numerous depositions, and memoranda submitted by the parties, the court has determined that under any possible construction of the facts, drawing all inferences in favor of the plaintiff, Campbell has failed to allege any deprivation of a property interest actionable under 42 U.S.C. § 1983.

First, to the extent that plaintiff's complaint alleges that his firing in 1973 was a deprivation, it is clear that he fails to state any claim. Plaintiff's complaint establishes that after his discharge he filed a complaint with the PELRB, which ordered him reinstated with back pay. Thus state process provided Campbell with a remedy for his discharge. Plaintiff apparently does not dispute this point, as he states that "the Magistrate correctly and fully treats one of the actions before the Maine [PELRB] involving the parties to this action ...," Plaintiff's Memo, at 1. Therefore, any deprivation of a property interest must have happened after the 1974 PELRB order that plaintiff be reinstated.

At this point in the analysis, however, it is difficult to discern precisely what deprivation is being alleged by plaintiff.[9] Reading the complaint together with the supporting affidavits, plaintiff might be thought to be arguing that the "conspiracy" of the state actors deprived Campbell

of the reinstatement to which he was entitled, thus rendering the reinstatement order meaningless. *Cf. Roy v. City of Augusta,* 712 F.2d 1517 (1st Cir.1983) (arbitrary actions of state officials, who allegedly subverted state process by ignoring court mandate, could constitute a due process violation, depending on the factual context of their actions). The allegations contained in Campbell's complaint and moving papers, however, fail to support this interpretation of Campbell's complaint. Apparently Campbell was never reinstated to his position as sergeant, in spite of the PELRB order. The Town of Freeport appealed the order to the Kennebec County Superior Court,[10] which affirmed the reinstatement order in September 1976. In October 1976, the town appealed the superior court order to the Maine Supreme Judicial Court. Before the appeal could be heard, however, Campbell was arrested, tried, and convicted. In June 1977, while in jail, Campbell settled with the town, accepting $9,000 and signing a release of claim against the town and certain individual defendants.

These facts, undisputed by Campbell, make it apparent that Campbell has no section 1983 claim arising out of the town's failure to reinstate. Plaintiff does not contend that the release is invalid, or that he was coerced into signing it, or that he failed to receive the promised consideration.[11] The release refers to three court

9. The pleadings and memoranda of the plaintiff are less than helpful in identifying precisely what deprivation is being alleged. In response to the Magistrate's Recommended Decision, plaintiff states:

The fact that [Campbell] has not yet been vindicated has been as a result of the on going conspiracy and his rights protected by the statute are still viable and have not been ever resolved. The mention in the Complaint of the alleged payroll padding scheme relates to the method the Defendants were using to keep the personalities in line and continue the furtherance of the conspiracy. (Complaint No. 17) (If the Court does not see this issue the Plaintiff would seek leave to amend the Complaint).

Plaintiff's Memo, at 1–2. In order to avoid further expense and delay for defendants, the court has made every effort to "see this issue."

Having concluded that there is no actionable claim under section 1983, leave to amend is denied.

10. Plaintiff makes no claim that the appeals of the town, in and of themselves, constituted a property deprivation, and it is unlikely that such a claim could succeed. *See, e.g., Beker Phosphate Corp. v. Muirhead,* 581 F.2d 1187 (5th Cir.1978) (delay of project caused by administrative and judicial appeals is not actionable under § 1983).

11. Plaintiff's only contentions regarding the release are that (1) "[p]laintiff's complaint with regards to [defendants] covers a much broader scope of activity than that which was covered in the release," and (2) that "[u]nder the instant circumstances the release is a product of fraud in that at the time of its execution [the town

actions involving the Town of Freeport, the FPBA, and Campbell, and in the release Campbell states that "I hereby agree to stipulate for the record in said referenced actions that the Judgment and Orders entered therein have been satisfied in full." Memorandum Of Law In Support of Defendant Benway's Motion to Dismiss, attachment. Thus the release indisputably resolves any right to reinstatement and compensation that plaintiff had based on the order of the PELRB.

■ Furthermore, even if there were no release, or if plaintiff contested the validity of the release, plaintiff's complaint still could not be construed to allege an actionable claim under section 1983. The facts alleged regarding the "deprivation" of his constitutional rights relate only to the conspiracy to benefit employees of the Town of Freeport "who would assist in furthering the plot to discredit the plaintiff and impeach his efforts before the Maine [PELRB]." Complaint, ¶ 17. Assuming, *arguendo*, that such a plot existed and was successful,[12] it could have no bearing on any deprivation of liberty occurring *after* the hearing before the PELRB.[13] Therefore, if the first count of plaintiff's complaint states any claim, it must be a claim arising from the deprivation of property resulting from some PELRB proceeding

other than that in which plaintiff's employment rights were adjudicated.

■ Although neither the pleadings nor the affidavits of plaintiff make any specific reference to another hearing before the PELRB involving Campbell, it appears that this is the theory upon which plaintiff relies. In opposing the Magistrate's Recommended Decision, plaintiff states that "[t]he dispute which was resolved was resolved in favor of the plaintiff. The second dispute, however, the dispute overlooked by the Magistrate, remains unresolved." Plaintiff's Memo, at 1. This "second dispute" is an enigma, appearing for the first time in plaintiff's objections to the Magistrate's Recommended Decision. The court has searched the record in vain for any evidence of a second dispute involving a property right of plaintiff. The Supreme Court has stated that "[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (citations omitted). Plaintiff has failed to identify, and on this record the court cannot discern, any property right of which plaintiff might be said to have been deprived as a result of the alleged conspiracy

manager] had no intention of either stopping or disclosing the payroll padding scheme, or his participation in it, and to try to have this release protect [defendants] is, at the very best, overreaching." Plaintiff's Response To Benway's Motion To Dismiss, Oct. 26, 1984, at 4–5.

Aside from the fact that the complaint alleges that the conspiracy existed from November 1983 to January 4, 1977, Complaint, ¶ 17, and thus by plaintiff's own allegations any conspiracy ended six months prior to the signing of the release, plaintiff's protestations, if credible, still implicitly concede the validity of the release as it relates to the claim arising from his employment action before the PELRB.

**12.** Although the court does not reach the question of the sufficiency of the evidence, it must be noted that the affidavits of plaintiff rely to a large extent on hearsay and conclusory state-

ments, and their evidentiary value is highly suspect.

**13.** If such a plot existed during plaintiff's initial claim before the PELRB, plaintiff still would not be alleging a claim cognizable under § 1983, because the alleged conduct of the state actors, whether or not illegal, did not deprive plaintiff of any property. The First Circuit has noted that "even the outright violation of state law by local officials 'is a matter primarily of concern to the state and does not implicate the Constitution'—absent 'fundamental procedural irregularity, racial animus, or the like.'" *Roy*, 712 F.2d at 1523, *quoting Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). It would be difficult for Campbell to argue that there was fundamental procedural irregularity, because the proceeding ordered him reinstated.

to bias witnesses appearing before the PELRB.[14]

In sum, considering the pleadings, affidavits, and memoranda submitted by plaintiff, the court finds no conceivable set of facts that would constitute a deprivation of a property interest under the first count of plaintiff's complaint. Therefore, the court *ACCEPTS* the Magistrate's recommendation that summary judgment be granted to all defendants under the first count of plaintiff's complaint.

II. *The Allegations Pertaining To Unreliable Witnesses And False Testimony*

The second count of plaintiff's complaint alleges that defendants conspired to "fabricate a felonious breaking and entering with a firearm at the Old Town High School, which resulted in the eventual indictment of the Plaintiff and a conviction of the Plaintiff for breaking and entering while armed and theft." Complaint, ¶ 19. Plaintiff alleges that defendants coerced a witness (Arthers) into implicating plaintiff, that defendants caused Arthers to testify to "an alleged commission date with knowledge that the date was wrong," and that defendants allowed Arthers to testify that Arthers had previously pled guilty to the burglary in which he was implicating plaintiff, when in fact the burglary at Old Town High School was not among the 48 felonies to which Arthers pled guilty. The third count, in part, similarly alleges that defendants "acted in concert violating plaintiff's right to a fair trial and due process by using a witness ... who they all knew was unreliable."[15] Complaint, ¶ 23.

The Magistrate recommended summary judgment for all defendants on these allegations. Under Maine law, as the Magistrate correctly noted, where a defendant has the incentive and opportunity to fully litigate an issue in a criminal proceeding, the criminal conviction conclusively establishes all facts essential to the final judgment of conviction. Recommended Decision, at 5. The Magistrate noted that plaintiff's allegations regarding the incredibility and unreliability of the witnesses were conclusively resolved against the plaintiff at the earlier trial. Accordingly, the Magistrate recommended summary judgment in favor of defendant on the second count and on that portion of the third count alleging that plaintiff's due process rights were violated by the use of an unreliable witness.

The plaintiff objects to this portion of the recommended decision on the ground that "the section 1983 issues in the instant case are separate from the issues litigated in the prior criminal trial or in the subsequent motion for a new trial." Plaintiff's Memo, at 2. Plaintiff's objection is without merit.

■ In section 1983 actions, federal courts will give the same effect to state court proceedings as would a state court sitting in a civil action. *See* 28 U.S.C. § 1738; *McDonald v. City of West Branch*, 466 U.S. 284, 285–87, 104 S.Ct. 1799, 1800–02, 80 L.Ed.2d 302 (1984). The Maine Supreme Judicial Court has held that "where issues were actually litigated and finally adjudicated in a criminal proceeding, the conviction 'conclusively establishes all facts essential to the final judgment of

---

**14.** Plaintiff's contention that there is a second dispute is also undermined by his complaint, which alleges that the conspiracy lasted from November 1973 to January 1977, the time of his arrest. To the extent that plaintiff is referring to a current dispute, however, it is clear that any allegation of a deprivation of a property interest, or liberty interest, would not be ripe for adjudication, as there would be no final state determination. Thus, it could not be determined whether the conduct of state officials resulted in any deprivation.

**15.** The allegedly "unreliable" witness is Evelyn Robinson, who at one time was married to John Jochum, a member of the Freeport Police De-

partment and a friend of the plaintiff. Campbell's conviction was based on the testimony of three people: the Principal of Old Town High School, who established that a typewriter was stolen; Arthers, who testified that he broke into Old Town High School, accompanied by Campbell, and stole a typewriter; and Robinson, who testified that Campbell gave her and her husband a typewriter, the same brand as was stolen, saying that it was from Arthers. Both on his motion for a new trial and in this action, Campbell suggests that Robinson lied about the typewriter as a way to get even with her former husband.

conviction.'" *Pattershall v. Jenness*, 485 A.2d 980, 983 (Me.1984) (quoting *Hanover Insurance Co. v. Hayward*, 464 A.2d 156, 160 (Me.1983)). This rule of collateral estoppel applies only to those cases in which "the defendant had both the incentive and opportunity to fully litigate the issues in the criminal proceedings." *Pattershall*, 485 A.2d at 983. Thus, for the purpose of this action, the court must determine whether the issues raised in plaintiff's 1983 action were resolved in and essential to the final judgment of conviction in plaintiff's criminal trial. If they were, and if plaintiff had the opportunity and incentive to litigate these issues fully, then this court is precluded from reconsidering those issues in the present action. *See McDonald, supra*, 466 U.S. at 285–87, 104 S.Ct. at 1800–02.

Plaintiff alleges that the defendants deprived him of his due process right to a fair trial by using dishonest and unreliable witnesses. Thus, in order to prove his section 1983 claim, plaintiff must prove that these witnesses were in fact dishonest and unreliable. But the credibility of these witnesses was necessarily decided, both at plaintiff's trial and on his motion for a new trial. As the First Circuit has noted, "[a]n issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached." *Dennis v. Rhode Island Hospital Trust National Bank*, 744 F.2d 893 (1st Cir.1984). Plaintiff's section 1983 action challenges the credibility of the two witnesses who established Campbell's motive and presence at the scene of the crime. *See note 15, supra.*

The jury in the state court proceeding had to have found these witnesses credible in order to find Campbell guilty. In *Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir.1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975), the section 1983 plaintiff alleged that his due process right to a fair trial had been violated by the use of the allegedly perjurious testimony of a police officer at plaintiff's criminal trial. The First Circuit held that collateral estoppel applied where the only constitutional claim raised was a violation of due process, since the credibility of the police officer and the truthfulness of his testimony were resolved in the criminal trial. *Mastracchio*, 498 F.2d at 1261. Similarly, the credibility issues that were resolved against Campbell at his criminal trial were identical to the issues he seeks to raise in the present section 1983 action for denial of due process.[16]

■ Plaintiff had the opportunity and the incentive to litigate fully the credibility of these witnesses.[17] Plaintiff was charged with and convicted of two felonies, carrying a maximum possible penalty of 30 years. *See* Me.Rev.Stat.Ann. tit. 17–A, §§ 353, 401, 1252 (1974). In adopting the rule of collateral estoppel applicable here, the Maine Law Court stated that "the rule assumes that the defendant had both the incentive and the opportunity to fully and fairly litigate the issues in criminal proceedings." *Hanover*, 464 A.2d at 160 (citations omitted). In a later application of the rule, the Maine court noted that "it will be more difficult to establish the *absence* of an incentive to litigate, when dealing with a

**16.** To the extent that the credibility issues were not resolved at the earlier trial, they are immaterial, because the unresolved issues could not have caused any loss of liberty. As the court noted in *Mastracchio*,

The court below reasoned that, "If the alleged perjure [sic] testimony was indeed essential to a jury's finding of guilt, then the issues have been resolved against plaintiff in State Courts. If the alleged perjure [sic] testimony was not essential to his conviction below, then even if the testimony was false, plaintiff has not suffered any damages as a result thereof."

498 F.2d at 1261.

**17.** Plaintiff does argue that "he did not have the opportunity to fully and fairly litigate his section 1983 claims during his criminal trial." Plaintiff's Memo, at 3. The basis for this objection, however, is that defendants "conspired to withhold information from him." *Id.* Plaintiff does not assert, or even imply, that this "withheld information," *see* section III, *infra*, affected his ability to cross examine the witnesses for the prosecution. Thus, plaintiff apparently does not dispute that he had the incentive and opportunity to cross-examine the two key witnesses.

serious crime.... There is a correlation between the seriousness of the offense and the incentive to fully and vigorously litigate." *Pattershall*, 485 A.2d at 983 (*emphasis added*). Plaintiff's criminal trial involved serious offenses, and the record establishes that Campbell did indeed "vigorously litigate." Counsel for plaintiff cross-examined both witnesses, and in the case of Arthers, the principal witness, counsel sought to elicit testimony establishing that Arthers' testimony was in return for receiving a lighter prison sentence. Further, plaintiff introduced his own witnesses, testified on his own behalf, and presented evidence contradicting that of the prosecution. Nevertheless, the jury resolved these questions of credibility against the plaintiff by returning its "guilty" verdicts. *See State v. Campbell*, Cr. 77–21, docket sheet entry for 3/18/77 (Penob. Cty. Superior Ct.). Virtually the same issues were raised by Campbell's motion for a new trial, in which he sought to establish that Arthers had lied in order to receive a lighter sentence, and that the corroborating witness was biased. After a hearing, in which plaintiff presented evidence, the motion was denied; the denial was affirmed by the Maine Supreme Judicial Court. *State v. Campbell*, 423 A.2d 952 (Me.1980). Thus, not only did Campbell have the opportunity and incentive to litigate these issues of witness credibility, but the record establishes that he fully availed himself of every opportunity. That the litigation of these issues in state proceedings did not produce the desired result is not a basis for an action under section 1983. As the Supreme Court has stated, there is "no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all." *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 420, 66 L.Ed.2d 308 (1980).

Accordingly, the court *ACCEPTS* the Magistrate's recommendation that all defendants be granted summary judgment on Count II of the complaint and on that portion of Count III pertaining to the use of an unreliable witness.

III. *The Allegation That Exculpatory Evidence Was Withheld From Plaintiff While His Motion For A New Trial Was Pending*

The third count of the complaint additionally alleges that defendants "violated the State of Maine's on-going duty to disclose material evidence favorable to the plaintiff in this [sic] original capacity as Defendant and then as an Appellant within the time period for prosecuting a motion for a new trial." Complaint, ¶ 24. Plaintiff asserts that defendants withheld information concerning a typewriter stolen from Old Town High School.[18] Campbell alleges that in February of 1979 he spoke with the Old Town Police Chief, who told him that the typewriter had been found, but that all information concerning it had been turned over to the state attorney general's office. Campbell made a request for this information from the Attorney General, which was denied pursuant to Me.Rev.Stat.Ann. tit. 5, § 200–D (1976).[19] The denial came while plaintiff was preparing his motion for a new trial, and thus plaintiff alleges that "the denial ... was in furtherance of [de-

---

18. Campbell was convicted of stealing a typewriter from Old Town High School. The testimony at his criminal trial established that Campbell gave the stolen typewriter to a friend. Campbell maintains, however, that the typewriter given to his friend was a different model. At the time of his trial, the location of the typewriter stolen from the high school was unknown. However, the allegedly "unreliable" witness testified that Campbell painted the typewriter and took it away upon learning that Arthers had been arrested.

19. The statute reads:
**Complaints and investigative records confidential**
Notwithstanding any other provision of law, all complaints and investigative records of the Department of the Attorney General shall be and are declared to be confidential. Me.Rev.Stat.Ann.tit. 5, § 200–D (1978).

fendants'] continued conspiracy to violate the plaintiff's due process by abrogating and ignore [sic] the Constitutionally mandated ongoing duty to disclose that the state owed the Plaintiff, ..." Complaint, ¶ 27.

The Magistrate noted that the obligation to disclose exculpatory information is a *prosecutorial* duty. Recommended Decision, at 7, *citing Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As the duty is that of the prosecutor, the Magistrate reasoned that prosecutorial immunity must also apply to a breach of that duty. Recommended Decision, at 7, *citing Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Assuming, for sake of the pending motion, that the prosecutor had breached his duty to disclose, the Magistrate concluded that "the issue of disclosing exculpatory information is a central element of the prosecutor's role and not an administrative or investigative element," Recommended Decision, at 7, and therefore the prosecutor had absolute immunity from damages caused by that decision.

The plaintiff does not object to the Magistrate's conclusion that the prosecutor is immune from damages resulting from his decision not to disclose "exculpatory" information. Plaintiff does contend, however, that "the cloak of prosecutorial immunity does not extend to either investigative members of the State Attorney's staff or police officers," Objections, at 2, and that "[a] police officer, who violates federally protected rights, is amenable to suit under 42 U.S.C. § 1983," Plaintiff's Memo, at 4.

Plaintiff's objection misses the point of the Magistrate's Recommended Decision. The Magistrate assumed, "for the benefit of Plaintiff's argument, that all three of these defendants can be placed under the rubric of prosecutor." Recommended Decision, at 7. Such an assumption is clearly for the plaintiff's benefit, since otherwise there is no identified obligation on the part of the police officers or investigators to reveal exculpatory information.[20] The constitutional obligation imposed by *Brady* is a duty incumbent upon the prosecutor. *See* 373 U.S. at 87, 83 S.Ct. at 1196–97. Plaintiff identifies no legal basis for compelling police officers or investigators to reveal exculpatory information; moreover, he ignores the contrary mandate of the Maine legislature. *See* note 19, *supra.*

Thus, although the duty to disclose exculpatory information falls "on the state, as a whole," *Hauptman v. Wilentz,* 570 F.Supp. 351 (D.N.J.1983), there is no independent duty of a police officer or investigative officer to disclose exculpatory information to a defendant. *Id.* at 351 n. 43. Therefore, the failure to reveal such information to the plaintiff in this case does not amount to a constitutional violation. *Id.* The only duty of a police officer in possession of exculpatory information is to turn it over to the prosecutor. *Id.* at 351; *see also Freeman v. State of Georgia,* 599 F.2d 65, 69 (5th Cir.1979) (failure of police to disclose identity of eyewitness to the prosecutor is imputed to the state, as the police are part of the prosecution team). There is no allegation in the instant case that the exculpatory information was withheld from the

**20.** There is serious doubt as to whether, in fact, any "exculpatory" information was withheld. Plaintiff alleges that he knew the typewriter had been found, based on his conversation with the police chief, Complaint ¶ 24, and an unnamed "independent source," Complaint, ¶ 26. Campbell alleges that his conversation with the police chief occurred in February 1979, which was prior to his December 1979, and March 1980, hearings on his motion for a new trial. Plaintiff did not, however, subpoena either the police chief or the investigators to testify regarding the "exculpatory" evidence that they were allegedly withholding. Plaintiff did produce another witness, who testified about another typewriter, and plaintiff's counsel also discussed, in arguing plaintiff's motion, the possibility that the stolen typewriter had been found, yet plaintiff's counsel made no other effort to elicit information on this evidence. As the Second Circuit has noted, "[e]vidence is not suppressed if the defendant either knew ... or should have known, ... of the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy,* 687 F.2d 610, 618 (2d Cir.1982) (citations omitted). Plaintiff's complaint alleges that he knew the "essential fact"—i.e., that the stolen typewriter had been found.

122

prosecutor by the police; on the contrary, the complaint specifically alleges that although the police chief knew of the discovery of the missing typewriter, "the Attorney General's office had all the information and [the police chief] claimed he had no file and could give no further information." Complaint, ¶ 24. Thus the complaint fails to allege any conduct on the part of the police or investigators that amounts to a constitutional violation.

The court ACCEPTS the Magistrate's recommendation that all defendants be granted summary judgment on plaintiff's claim that exculpatory information was withheld from him in violation of his due process rights.