STATE OF MAINE

SAGADAHOC, ss.

DWIGHT D. WALLACE,

　　　　Plaintiff

　　v.

ALLSTATE INSURANCE
COMPANY,

　　　　Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-008
JRA-SAG- 4/18/2003

**DECISION AND ORDER**

DONALD L. GARBRECHT
LAW LIBRARY

APR 29 2003

In this matter, the plaintiff, Dwight D. Wallace (Wallace), filed an amended complaint alleging that the defendant, Allstate Insurance Company (Allstate), issued him a homeowner's insurance policy but has failed to honor that policy by refusing to defend Wallace in a separate civil action brought against him by Deputy Sheriff Aaron Skolfield (Skolfield).

The parties have filed cross-motions for summary judgment asking that the court determine Allstate's duty to defend the plaintiff in the action brought by Skolfield.

In its Statement of Material Facts (SMF), Allstate cites to the complaint brought by Skolfield against Wallace in which Skolfield alleges that the latter injured him. Specifically, Skolfield asserts that he responded to a complaint of loud and disorderly persons in Sebasco on September 16, 2001. While placing another person under arrest at the scene, Skolfield felt that Wallace was interfering with the arrest. Skolfield informed Wallace that he, too, was under arrest and attempted to arrest him. Because Wallace refused to submit to the arrest, Skolfield used pepper spray to effectuate the

APR 22 '03

arrest Wallace then struck Skolfield in the head with a ceramic coffee mug. This act, it is claimed, caused injuries to Skolfield's head and neck.[1]

The parties agree that Wallace was indicted for Refusing to Submit to Arrest, Obstructing Government Administration, and Assault on an Officer based on events occurring on September 16, 2001, involving Skolfield and Wallace.[2] They also agree that Wallace has pled guilty to Refusing to Submit to Arrest, and that the other two charges have been dismissed.

As noted, Skolfield has brought a personal injury action against Wallace, seeking damages for the injuries cited. In this case, Wallace grieves Allstate's refusal to defend him in Skolfield's suit when Wallace holds an Allstate Policy that covers legal defense in such a matter. Allstate replies it has no duty to defend Wallace in the case brought against him by Skolfield.

"Whether an insurer has a duty to defend in a particular case is a question of law." *Penney v. Capitol City Transfer, Inc. et al,* 1998 ME 44, ¶ 4, 707 A.2d 387, 388 (citations omitted). To determine the duty to defend, one compares "the allegation in the underlying complaint with the provisions of the insurance policy." *Id.* "If a complaint reveals a potential . . . that the facts ultimately proved may come within the coverage, a duty to defend exists." *Id.* (internal citations and quotations omitted).

_____

[1] In its reply memorandum, Allstate argues that Wallace has admitted these facts surrounding Skolfield's claimed injury because Wallace did not controvert them by proper record references as required by M.R. Civ. P. 56(h)(2). However, Allstate's SMF, wherein the events of September 16, 2001 are recited at paragraphs 1-7, relies only on the text of Skolfield's civil complaint in which he makes these allegations. Skolfield's complaint, however, is not admissible evidence as to the facts it alleges. Accordingly, these "facts" cannot be relied on to secure summary judgment. M.R. Civ. P. 56(e). In this regard, Wallace's reply SMF appropriately acknowledges that these allegations are contained in Skolfield's complaint against him.

[2] Without record reference, Wallace denies that the acts attributed to him in Skolfield's civil action were the specific subject of the criminal prosecution and asserts that copies of the complaint and the indictment do not contradict this position. Nevertheless, it is plain from the materials submitted by the parties, and their memoranda, that Skolfield has sued Wallace for the injuries Skolfield alleges occurred during Wallace's arrest, and that Allstate refuses to defend Wallace in that suit because it involved a criminal act, as will be discussed, *infra. See, e.g.,* Plaintiff's Objections to Defendant's Motion for Summary Judgment, pp. 1-2.

Moreover, if language excluding policy coverage is ambiguous and susceptible to alternative interpretations, such an exception in the policy will be construed "strictly against the insurer and liberally in favor of the insured" so that coverage afforded by the policy will be "'excluded' . . . only where such separately stated 'exclusion' unambiguously and unequivocally negates coverage." *Patrons-Oxford Mutual Ins. Co. v. Dodge*, 426 A.2d 888, 891-892 (Me. 1981) (internal citations omitted).

In *Patrons*, the Law Court determined that the Superior Court erred in concluding that the insurance company had no duty to defend in a case where the insured was sued for shooting another and where the shooting was also the basis for an earlier, separate conviction for aggravated assault. The Law Court reasoned that Patrons' exclusion in its policy for bodily injury that is "either expected or intended from the standpoint of the Insured" entails bodily injury "the insured in fact *subjectively wanted* ('intended') to be a result of his conduct or in fact *subjectively foresaw as practically certain* ('expected') to be a result of his conduct." *Id.* at 890, 892 (emphasis in original). Because "recklessness," as an alternative culpable state of mind for aggravated assault, may rest on proof that the actor was only aware of a risk that his conduct would cause bodily injury rather than a consciousness that his conduct would cause bodily injury, a jury verdict of guilty on a charge of aggravated assault does not necessarily mean that the injury was either "expected or intended from the standpoint . . . of the Insured." *Id.* That being so, Patrons should have been required to defend its insured because he may have been unaware, from his subjective viewpoint, of the risk that his conduct would cause bodily injury. Such conduct would not be "expected or intended" and, as the court found, would not support the application of an exclusion clause in an insurance policy for such action.

Allstate's policy in this case contains exclusion language different from the text of the policy exception in *Patrons*. While Allstate agrees that it issued an insurance policy to Wallace that would provide a defense to him if sued for bodily injury arising from an "occurrence,"[3] it points to language in the policy which, it asserts, excludes coverage for the type of event that forms the basis for Skolfield's suit. This language reads:

> 1.     We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any injured person. This exclusion applies even if:
>         a)     such insured person lacks the mental capacity to govern his or her conduct;
>         b)     such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or
>         c)     such bodily injury or property damage is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

Allstate Policy, pp. 28-29.

According to Allstate, its policy language excludes both subjectively and objectively expected injuries resulting from an insured's acts. Thus, the text that excepts coverage for "bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts . . . of any insured person" is an objective test that denies coverage to an insured if the result of his conduct was reasonably foreseeable by one in his position.

Moreover, the exclusion provision excepts "bodily injury . . . which may reasonably be expected to result from the intentional *or* criminal acts . . . of any insured person." *Id.* (emphasis supplied). Thus, a criminal act that can be or is performed

---

[3] "Occurrence" is defined in Allstate's policy to Wallace as "an accident . . . resulting in bodily injury . . ." Plaintiff's SMF, ¶ 11, Exhibit 4, (Allstate Policy), p. 4.

4

without intent, i.e., without the conscious objective to cause the result or the awareness of attendant circumstances, provides the factual circumstance to exclude coverage when bodily injury may reasonably be expected to result from such an act. *See* 17-A M.R.S.A. § 35(1).

From this, the court concludes that Allstate's policy unambiguously bars coverage to an insured when bodily injury could objectively be expected as the result of his criminal act, irrespective of his subjective expectations or intent. Obviously, also, by the plain meaning of the text cited, intentional acts of the insured are also excluded from coverage.

The analysis required does not end here. Even though the court interprets the Allstate Policy to except coverage for any bodily injury that may reasonably be expected to result from the intentional or criminal acts of the insured, the court must also determine whether the allegations in the complaint may come within the policy's coverage notwithstanding the cited exclusion. *See Penney v. Capitol City Transfer, Inc.,* 1998 ME 44, ¶¶ 4, 6, 740 A.2d at 388-389.

As noted, *infra*, Skolfield sued Wallace for striking him with a ceramic coffee mug while Skolfield attempted to execute Wallace's arrest. Skolfield expressed this grievance in one count, entitled "Battery," and requests compensatory and punitive damages. A battery may be defined as a physical touching accompanied by intentionality; that is, "to act with substantial certainty as to the consequence of one's action," namely the contact with another. SIMMONS, ZILLMAN & GREGORY, MAINE TORT LAW, 2001 ed., § 1.02 (*quoting Pattershall v. Jenness,* 485 A.2d 980, 984 (Me. 1984)).

It is plain that Skolfield is complaining of Wallace's intentional contact that caused him injury. This allegation falls squarely within the policy exclusion of "any bodily injury . . . intended by, or which may reasonably be expected to result from the

5

intentional . . . acts . . . of any insured person." Allstate Policy, p. 28. Whether Wallace subjectively intended to strike Skolfield or Skolfield's injury could reasonably be expected to result from Wallace's intentional act, the policy does not provide coverage.

A similar conclusion pertains when the offending act is criminal. Whether the crime charged is assault or Refusing to Submit to Arrest, the policy excludes coverage for "any bodily injury . . . which may reasonably be expected to result from the . . . criminal acts . . . of any insured person." *Id.* As previously discussed herein, this is an objective test. Thus, if offensive contact, as here, could reasonably be expected to result from a criminal act, the policy provides no defense. Because Refusing to Submit to Arrest requires proof of either "the use of physical force . . . or [creating] a substantial risk of bodily injury to a law enforcement officer," 17-A M.R.S.A. § 751-A(1)(A), (B), it entails the prospect of bodily injury as such may "reasonably be expected to result from . . . [such] criminal act[s]." Said differently, because bodily injury must reasonably be expected to result when one uses physical force or creates a substantial risk of bodily injury to another, the criminal act of causing that bodily injury bars coverage under Allstate's policy.

From all this, the court concludes that no facts alleged in Skolfield's complaint come within the coverage of Wallace's Allstate Policy because the policy unambiguously negates coverage for bodily injury that can reasonably be expected to result from an intentional or criminal act of the insured. Skolfield's complaint relies on just such acts.

6

Because the court has so concluded, it finds that, as a matter of law, the plaintiff cannot prevail on his amended complaint and summary judgment must be entered for the defendant.[4]

The clerk is directed to make the following entry:

Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Cross-Motion for Summary Judgment is DENIED. Judgment is ENTERED for the Defendant on the Plaintiff's Amended Complaint.

So ordered.

Dated: April 18 2003

John R. Atwood
Justice, Superior Court

---

[4] Ordinarily a dispute of the nature described in the plaintiff's amended complaint would be expressed as a request for a declaratory judgment. Instead, the amended complaint relies on a breach of contract claim with an additional request for statutory damages. This is an acceptable substitute for a declaratory judgment claim because if Allstate can be excused from the contract by law, there is no breach and the plaintiff can neither compel its enforcement nor recover damages.