# United States Court of Appeals
## For the First Circuit

No. 05-1871

FPL ENERGY MAINE HYDRO LLC,

Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.

_____

STATE OF MAINE,

Intervenor.

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

Before
Torruella, Boudin and Howard,
<u>Circuit Judges</u>.

John H. Montgomery with whom Jeffrey A. Thaler, Sarah B. Tracy and Bernstein Shur were on brief for petitioner.
Jennifer Amerkhail with whom Cynthia A. Marlette, General Counsel, and Robert H. Solomon, Solicitor, were on brief for respondent.
Gerald D. Reid, Assistant Attorney General, Chief, Natural Resources Division, with whom G. Steven Rowe, Attorney General, and Paul Stern, Deputy Attorney General, were on brief for intervenor.

December 23, 2008

**BOUDIN**, <u>Circuit Judge</u>.  FPL Energy Maine Hydro LLC ("FPL") owns a facility that provides hydroelectric generation and flood control along the Kennebec River in Maine.  The present dispute grows out of FPL's effort to secure a renewal of an operating license from the Federal Energy Regulatory Commission ("FERC") and its attempts to get a water quality certification from the State of Maine, a necessary predicate for the renewal of the license.

FPL's predecessor first obtained an operating license from FERC in 1979.  Before its license could be renewed by FERC, section 401(a)(1) of the Clean Water Act required the applicant to obtain certification by Maine that the project complied with various state and federal water quality standards, or demonstrate that Maine had waived certification by "fail[ing] or refus[ing] to act on a request for certification" within one year.  33 U.S.C. § 1341(a)(1) (2006).

In December 1995, two years before its original license was to expire, FPL's predecessor applied to FERC for renewal of the license and sought water quality certification from Maine's Land Use Regulation Commission (in subsequent years the application would come before the Maine Department of Environmental Protection ("DEP")).  Ordinarily, the DEP Commissioner makes an initial decision, which can be appealed to the Department's Board of Environmental Protection.  The initial decision by the

-2-

Commissioner, or the Board's decision thereafter, can be appealed to Maine's Superior Court.  38 M.R.S. §§ 344 (2-A), 346(1).[1]

On November 14, 2003 (the last day a decision could be reached before the one-year deadline expired), the DEP Commissioner granted FPL's petition for certification. Within thirty days, four environmental groups appealed the DEP Commissioner's certification to the DEP Board. A copy of the appeal was also filed with FERC on December 10, 2003.  The Environmental Protection Agency also weighed in, filing comments with the DEP Board opposing the DEP Commissioner's decision.

Thereafter, FERC issued FPL a thirty-two year renewal of its federal license, relying solely on the DEP Commissioner's decision, making no mention of the pending appeal. FPL Energy Me. Hydro LLC, 106 F.E.R.C. ¶ 62,232, 2004 WL 628683 (Mar. 30, 2004). Within the thirty-day limit provided for reconsideration, 18 C.F.R. § 385.713(b), Appalachian Mountain Club ("AMC") filed a timely petition for rehearing of FERC's decision granting the license.

Then, two months after an April 1, 2004 meeting, the Maine DEP Board issued an order rescinding the 2003 certification without prejudice to a renewed application.  FERC, advised of the

---

[1]Each year, from 1996 to 2002, FPL's predecessor (and, when it succeeded to ownership, FPL) filed an application for certification, but then withdrew it before the DEP could act.  In 2003, Maine's legislature adopted a new water quality standard for so-called hydropower impoundments, see Resolves 2003, c. 137 (L.D. 1059), possibly beneficial to FPL.

-3-

DEP Board's denial of certification, granted the pending petition for rehearing, and stayed the order granting FPL a new license. FPL Energy Me. Hydro LLC, 108 F.E.R.C. ¶ 61,261, 2004 WL 2106361 (Sept. 21, 2004). FPL filed its own petition for rehearing before FERC, which was later denied. 111 F.E.R.C. ¶ 61,104, 2005 WL 904387 (Apr. 19, 2005). AMC's own rehearing petition remains pending before FERC.

FPL then filed two separate appeals: one, in the Maine Superior Court, contested the DEP Board's rescission of the certification; the other, in this court, sought review of FERC's order staying its grant of a new license. This court held the latter proceeding in abeyance pending the Maine court proceedings. FPL eventually lost its challenge to the DEP Board decision, first in the Maine Superior Court and then in the Maine Supreme Judicial Court ("the SJC"). FPL Energy Me. Hydro LLC v. Maine Dep't of Envtl. Prot., No. 04-50, 2006 WL 2587989 (Me. Super. Ct. May 25, 2006), aff'd, 926 A.2d 1197, 1199 (Me. 2007), cert. denied, 128 S. Ct. 911 (2008).

In the state court proceedings, the Maine SJC rejected three arguments by FPL: that the DEP Board action was invalid because made more than a year after the request for certification, or alternatively that the state waived certification by failing to act within the required time period; that the Board applied an incorrect standard in its water quality analysis; and that the

-4-

Board had erred in finding that the project did not meet the relevant state water quality standards.  FPL Energy Me. Hydro LLC, 926 A.2d at 1199.  In the first ruling, FPL's main target on this appeal, the court determined that the one-year time limitation was satisfied by the DEP Commissioner's decision within the specified period.  Id. at 1203.

FPL's present challenge to FERC's stay of the license has now gone forward in this court.  Here, FPL argues that FERC erred because the Board's action rescinding the certification violated the CWA's one-year time limit and is a nullity, resulting in either a waiver of certification or reinstatement of the DEP Commissioner's certification.  Alternatively, FPL says FERC failed to recognize that it had discretion to disregard the DEP Board's allegedly belated action and that the case should be remanded so that it can exercise that discretion.

FERC, joined by Maine, questions our jurisdiction and otherwise defends its actions on the merits.  The jurisdictional arguments, a threshold matter, are that FERC's stay of the license is not ripe for judicial review or, alternatively, that FPL has failed to demonstrate a sufficient injury to grant it standing under Article III of the Constitution.  The first issue is "peculiarly a question of timing," Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985) (quotation omitted); the

-5-

second, of impact, Save Our Heritage, Inc. v. FAA, 269 F.3d 49, 56 (1st Cir. 2001).  We address them in order.

The ripeness doctrine aims to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  Abbott Labs. v. Gardner, 387 U.S. 136, 148-49 (1967).  FERC's brief argues that the agency has yet to "determine[] how it will treat Maine['s] rescission of the 2003 Certification."

Yet FERC has twice said that it will not treat the CWA one-year deadline as precluding the DEP Board from revisiting the certification, although offering slightly different explanations. Thus, in granting the stay, FERC recognized that section 401 of the CWA requires a state agency to act on a request within one year, but it concluded that "[i]n this case, the Maine DEP satisfied this requirement by granting certification within the statutory time period" and then continued:

> There is nothing in the language of section 401 to suggest that a State must not only act on the certification request but also take action on any appeals that might subsequently be filed within one year.  Accordingly, we cannot find that certification was waived.

2004 WL 2106361, at *2.

Subsequently, with the Maine court litigation underway, FERC qualified its explanation, but not its result, in rejecting FPL's request for rehearing. It said: "Issues concerning the validity of state actions under section 401 are for state courts to decide, and federal courts and agencies are without authority to review these matters." 2005 WL 904387 at *3. The result is that FERC has now twice declined to treat as untimely the DEP Board's action in rescinding the certification, and that determination does not appear to be provisional.

FERC's alternative jurisdictional objection is that FPL has not yet suffered the "injury in fact" required for standing under Article III. After all, FERC reasons, it has not dismissed FPL's renewal application and has followed normal practice by annually extending FPL's prior license while proceedings continue. Accordingly, it argues that FPL has not been sufficiently harmed by the stay to give it standing. Cf. Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) ("possible future injury" is not enough for prospective relief).

The standing requirement is meant to assure that a litigant in federal court has a "concrete stake in a controversy." Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 109 (1st Cir. 1999). Although we are dealing only with FERC's stay of its license renewal and not an outright rejection, the result is that FPL now no longer has an effective, renewed

thirty-two year license. While it can temporarily continue operations, it is (unless FERC unexpectedly alters its stay order) hostage to further DEP Board proceedings in which the DEP Board has considerable leverage to impose stiffer requirements.

So, as a legal matter, FPL no longer has the protection of the thirty-two year license on the conditions previously adopted by the DEP Commissioner; in practical terms, it probably has little prospect of getting that license except on stricter terms. And all this is apart from the additional cost and possible planning and financial effects on a large utility with a now uncertain license. We think that FPL has every incentive to litigate this case and that its stake in the outcome is more than "concrete" enough for Article III. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992).

Jurisdiction being satisfied, it might seem that the time has come to confront "the merits" of FPL's waiver argument. The claim itself could easily present issues of state administrative procedure and the interpretation of the CWA; and while the Maine courts have the last word on the former, a federal court would not be bound under Erie, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), to defer on issues of federal law. See Sola Elec. Co. v. Jefferson Elec. Co., 317 U.S. 173, 176 (1942).

Nor is the outcome clear cut. In providing a one-year time limit for state certification, Congress was obviously alert to

the concern that a state might otherwise unduly delay.  The one-year limit seemingly does not apply to state judicial review after certification by a state agency, as both parties apparently agree; but it is uncertain how the statute should be read where an otherwise effective state agency decision on certification is reached within one year but administrative review is available and completed only after the year has elapsed.

Yet, the very same rescission issue was fully litigated in the Maine SJC, which considered and rejected on the merits FPL's explicit claim that section 401 barred the DEP Board's action.  The U.S. Supreme Court denied certiorari and the Maine SJC decision is therefore final.  See D.C. Ct. of App. v. Feldman, 460 U.S. 462, 476 (1983).  It is not Erie but res judicata principles that bar us from reexamining the Maine courts' decision that the DEP Board validly rescinded the certificate.

A federal court is generally bound under res judicata to give the same preclusive effect to a state court judgment as would be given to it by a local court within that state.[2]  This is true "regardless whether the state-court decision involves federal or

---

[2]See, e.g., Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317, 323 (1st Cir. 2001), cert. denied, 534 U.S. 1127 (2002); Felix Davis v. Vieques Air Link, 892 F.2d 1122, 1124 (1st Cir. 1990).  The rule reflects both federal common law principles and 28 U.S.C. § 1738, the latter of which has been read to require that "all federal courts . . . give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  Allen v. McCurry, 449 U.S. 90, 96 (1980).

state law." Penobscot Nation, 254 F.3d at 323 (citing Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000)). So the question is not whether we are bound generally to read section 401 as Maine has done but whether we can reexamine its conclusion in this case as applied to the specific DEP Board action taken in this instance. See Kremer v. Chem. Constr. Co., 456 U.S. 461 (1982) (applying res judicata to state-court judgment in review of state administrative agency determination).

Maine law requires that for res judicata to apply that "the identical issue was determined by a prior final judgment, and that the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding." Van Houten v. Harco Constr., Inc., 655 A.2d 331, 333 (Me. 1995) (internal quotation mark and citation omitted). FPL all but concedes that its present section 401 arguments were made and rejected by the Maine SJC but it argues that the case invokes two recognized "exceptions" to the principles of res judicata.

The first exception FPL invokes is one allowing a court to disregard res judicata where the public interest so requires. Restatement (Second) of Judgments § 28(5) (1982). While Maine's view of the exception is narrower than that set forth in the Restatement, Wells v. State, 474 A.2d 846, 850 (Me. 1984)(limiting exception to "extreme and rare case[s]"), FPL would not prevail even if Maine followed the Restatement formulation, which still

requires a "clear and convincing [showing]. . . of the potential adverse impact of the determination on the public interest." Restatement, supra, § 28(5).

The only effect of preclusion here is that we do not address on the merits, on review of this stay order in this case, the underlying FPL claim that the DEP Board's rescission of the certificate violated the CWA one year deadline. This leaves the stay order in effect but FPL fails to show that this single event adversely affects the public interest. Res judicata in this case does not lock us or any other federal court into a specific reading of section 401. If the Maine SJC's reading is wrong--which is far from certain--that can be addressed when the issue next arises.

FPL complains that because the Maine SJC relied on FERC's own gloss on section 401 offered in granting the stay, res judicata effectively deprives FPL of its ordinary opportunity to get a FERC order reviewed on the merits in a federal circuit court. But the right to a federal forum does not automatically dispense with res judicata or other ordinary limitations on review. Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 84-85 (1984). Anyway, FPL is the one that chose to raise the federal issue in state court in the first place. As in England v. La. State Bd. of Med. Exam'rs., 375 U.S. 411 (1964),

> we see no reason why a party, after
> unreservedly litigating his federal claims in
> the state courts although not required to do
> so, should be allowed to ignore the adverse

-11-

state decision and start all over again in [federal court].

Id. at 424.

FPL also gets no help from a second Restatement exception, see Bath Iron Works Corp. v. Dir., Office of Workers' Comp., 125 F.3d 18, 21-22 (1st Cir. 1997) (assuming that Maine courts would apply exception); In re Michaela C., 809 A.2d 1245, 1257 (Me. 2002) (discussing exception in dissenting opinion), cert. denied sub. nom., Corbin v. Me. Dep't. of Human Servs., 538 U.S. 931 (2003), where "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action." Restatement, supra, § 28(4).

This exception is designed to protect a party from res judicata where the party failed to carry the burden of proof in an earlier proceeding but the burden there was heavier than it would be in the new proceeding. Restatement, supra, § 28(4) cmt. f. But FPL has not shown, and cannot show, that the standard of review applicable to such a legal claim was any different in the Maine SJC than it would be if we were considering the legal issue itself.

FPL next argues that however section 401 may be read, FERC cannot by its stay order undue a license already granted. FPL says in substance that under FERC's governing statute and pertinent case law, FERC has no power to modify a final FERC license without the licensee's consent. 16 U.S.C. § 799 (licenses "may be altered

-12-

or surrendered only upon mutual agreement between the licensee and the Commission after thirty days' public notice."); Keating v. FERC, 927 F.2d 616, 623 (D.C. Cir. 1991).

Yet so far FERC has not modified the license but simply stayed its order granting the license pending reconsideration. Its authority to revisit the grant of a license in response to a timely petition for reconsideration can hardly be open to question. Henwood Assocs., Inc., 50 F.E.R.C. ¶ 61,183, 61,548 (Feb. 15, 1990), aff'd in part, vacated in part on other grounds, Cal. v. FERC, 966 F.2d 1541 (9th Cir. 1992). Whether FERC could "stay" a license after the period for reconsideration had lapsed is an issue not presented here.

Lastly, arguing in the alternative and relying on our decision in Puerto Rico Sun Oil Co. v. EPA, 8 F.3d 73 (1st Cir. 1993), FPL argues that FERC misconstrued its own powers by failing to recognize that it had authority to accept or disregard the DEP Board's action precisely because it was untimely. FPL says, therefore, that the stay order should at the very least be remanded to FERC so it can rule again on the stay application with an awareness that it can disregard the rescission of the certification.

Sun Oil does say that the responsible federal agency--there it was the EPA--is free to disregard an untimely state certification action under section 401, id. at 79; but the premise

of FPL's argument is that in this case, as was unquestionably true in <u>Sun Oil</u>, <u>id.</u> at 75-76, the state's action was untimely.  This is the very premise that the Maine SJC rejected and (as we have explained) the Maine SJC's contrary determination that the DEP Board's rescission was timely binds FPL in this court.

The petition to review FERC's stay order is <u>denied</u>.